This is an appeal from a judgment of the Geauga County Court of Common Pleas that granted summary judgment to appellee, Motorists Mutual Insurance Company, on a question of underinsured motorists coverage. The trial court found that appellants, the children of Edgar Smock and his wife and the executrix of his estate, Harriet Smock, were not entitled to any underinsurance coverage. The trial court based its decision on the terms of the insurance policy, the applicable law, and the undisputed fact that appellants had collected $100,000 from the tortfeasor's insurer, the same as the per-person limit of the applicable underinsurance coverage. We affirm.
On February 14, 1996, Edgar Smock was killed when his vehicle collided with a vehicle driven by Charlotte Hall. Ms. Hall was allegedly responsible for the collision. At the time of the accident, Ms. Hall was driving a vehicle owned by her employer, Wind Song Farm, Inc. The vehicle was covered by an insurance policy with State Farm Insurance Company. The policy's liability limits were $100,000 per person and $300,000 per occurrence. State Farm tendered its per-person policy limit of $100,000 to appellants.
At the time of the accident, Edgar and Harriet Smock were covered by an automobile insurance policy with appellee that included uninsured/underinsured coverage, with limits of $100,000 per person and $300,000 per occurrence. Appellants brought this wrongful death action against Ms. Hall, Wind Song Farm, Inc., appellee, and several other insurance companies. Appellants' claim against appellee requested a declaration of their rights to underinsurance coverage under the Smock's policy.
Appellee moved the trial court for summary judgment, contending that appellant's underinsurance claims were explicitly limited by the terms of the policy to the single per-person limit of $100,000:
 "The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability is our maximum limit of liability for damages * * * for death, arising out of bodily injury sustained by any one person in any one accident. * * * This is the most we will pay regardless of the number of: 1. Insureds; 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the auto accident."
Because the per-person underinsurance coverage limit was the same as the tortfeasor's limit of liability insurance coverage, appellees asserted that appellants were not "underinsured." The trial court agreed that the terms of the policy precluded any underinsurance coverage here and granted summary judgment to appellee.
Appellants timely appealed, and raise a single assignment of error:
 "The trial court erred in granting defendant/appellee's motion for summary judgment."
As their sole assignment of error, appellants argue that the trial court erred in granting summary judgment to appellee. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard that a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. Parenti v.Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829.
We first note that the law relating to uninsured/underinsured motorists coverage has changed significantly with the passage of Senate Bill 20, which amended R.C. 3937.18, effective October 20, 1994. The General Assembly passed the amendments with the stated purpose of:
 "supersed[ing] the effect of the holding of the Ohio Supreme Court in the October 1, 1993 decision in Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage."
Section 7, Am.Sub. S.B. No. 20, 145 Ohio Laws, Part I, 204, 238.
Of particular relevance here, the amendment to R.C. 3937.18
included the following provision:
 "Any automobile liability or motor vehicle liability policy of insurance that includes [uninsured and underinsured motorist] coverages * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
R.C. 3937.18(H).
In determining whether to apply pre-amendment case law or the amended statute, courts look to the date the cause of action accrued under the underinsurance policy. The Ohio Supreme Court has held that such an action accrues with the effective date of the policy, as opposed to the date of the accident or settlement with the tortfeasor. Ross v. Farmers Ins. Group ofCos. (1998), 82 Ohio St.3d 281, syllabus. Because the effective date of the Smock policy was November 1, 1995, after the October 20, 1994 effective date of the amendment to R.C.3937.18, this case is governed by the amended statute.
Each of appellants arguments in opposition to the trial court's judgment have relied on the basic premise that they have multiple separate claims for wrongful death and loss of consortium, each entitled to full compensation. Appellants have asserted, based on the authority of Schaefer v. Allstate Ins.Co. (1996), 76 Ohio St.3d 553, syllabus, that an insurance policy cannot validly limit multiple claims for wrongful death or loss of consortium to a single per-person coverage limit. While their argument had validity prior to the amendment of R.C. 3937.18, it is no longer viable. As quoted above, R.C.3937.18(H) explicitly authorizes insurers to limit multiple derivative claims, that arise out of the injuries of a single insured, to a single per-person coverage limit. Appellee's policy included such a limitation that was properly held enforceable by the trial court.
Appellants have further asserted, based upon their same premise that they have multiple claims, that to determine whether they are "underinsured" the trial court should not have compared the coverage limits of the two insurance policies, but instead should have looked at the amounts available to pay each of their multiple claims.
As indicated above, for purposes of coverage under appellee's insurance policy, appellants' claims are viewed as an aggregate claim stemming from a single injury, not as multiple claims. They have again relied on pre-amendment case law, and attempt to use it to interpret the current R.C. 3937.18. SeeMotorists Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362
(relying on the pre-amendment premise that multiple claimants could not be limited to the per-person coverage limit). Their assertion that the relevant inquiry should not be "limits to limits" is contrary to the explicit terms of R.C. 3937.18. R.C.3937.18(A)(2) defines underinsured motorist coverage as:
 "an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)
Although the "amount available for payment" language remained unchanged in the amendment process, several other changes make it clear that the appropriate comparison is policy limits to policy limits. Language added to R.C. 3937.18(A)(2) clarifies that underinsured coverage is not intended to be excess insurance and that it should be reduced by any other coverage received. Moreover, as explained above, insurers can now validly limit derivative claims to a single per-person coverage limit, as appellee did here. See R.C. 3937.18(H). That legislative change defeated any viability that theAndrews reasoning may still have had.
Because the tortfeasor's liability coverage was limited to $100,000 per person, the same as appellants' underinsurance coverage limit, they are not "underinsured" under R.C.3937.18(A)(2). The trial court did not err in so holding and summary judgment was properly granted to appellee. Appellants' assignment of error is overruled.
The judgment of the trial court is affirmed.
 -------------------------------- JUDGE EDWARD J. MAHONEY Ret., Ninth Appellate District sitting by assignment
O'NEILL, P.J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.