JOURNAL ENTRY AND OPINION
Plaintiffs-appellants Alan B. Carruth, Jacqueline Carruth and Alicia Carruth (appellants) appeal the judgment of the Cuyahoga County Common Pleas Court in favor of defendant-appellee State Farm Ins. Co. (appellee) entered upon motion for summary judgment on Jacqueline and Alicia Carruth's claims for loss of consortium as asserted under two contracts of automobile issurance issued by State Farm which provide underinsured motorist coverage. We find no reversible error and affirm.
The facts of the underlying case are undisputed. On July 23, 1998, Alan B. Carruth suffered injuries in an automobile accident involving Edward A. Deighton. Deighton, not a party to this appeal, was insured under a policy of insurance issued by Erie Insurance Group with limits of liability coverage in the amount of one hundred thousand dollars ($100,000) per person and three hundred thousand dollars ($300,000) per accident. Appellants were insured under two policies issued by appellee State Farm which provided underinsured motorist coverage. On December 28, 1998, appellants commenced the within action asserting Alan Carruth's personal injury claims and Jacqueline and Alicia Carruth's loss of consortium claims naming as party defendants: appellee State Farm; Edward Deighton and Deighton's insurer, Erie Insurance Group; and Progressive Ins. Co. On June 1, 1999, appellants settled and dismissed their complaints with prejudice against party defendants Deighton and Erie Insurance Group. On June 23, 1999, appellants moved for summary judgment asserting their rights to underinsured motorists benefits for Jacqueline and Alicia's loss of consortium claims under appellee State Farm's policies. Appellee State Farm opposed appellants' motion and moved for summary judgment on the issue of underinsured motorist coverage for appellants' claims. On October 13, 1999, after full briefing of the issues, the trial court denied appellants' motion for summary judgment and granted appellee's motion by entry which stated in pertinent part:
 * * * [Appellants'] motion for summary judgment re: underinsured motorist benefits is denied. [Appellee] State Farm's motion for SJ is granted. Although the court follows [appellants'] definition of amounts actually received, R.C. 3937.18(H) and State Farm's policy (limits of liability, section 1, p. 14) support State Farm's argument that any consortium claim falls within the definition of bodily injury to one person and therefore has already been compensated by tortfeasor's policy limits-thereby leaving no underinsured claim. Furthermore, the court finds SB 20 to be constitutional. The court makes no finding as to other owned vehicle arguments made by both parties. Final.[1]
This timely appeal follows wherein appellants advance two assignments of error for our review.
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE STATE FARM INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT SINCE EACH MEMBER OF PLAINTIFF-APPELLANTS' FAMILY IS ENTITLED TO A SEPARATE LOSS OF CONSORTIUM CLAIM.
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE STATE FARM INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT SINCE S.B. 20 DENIES PLAINTIFFS A RIGHT TO A REMEDY IN VIOLATION OF ARTICLE I, SEC. 16 OF THE OHIO CONSTITUTION.
In each assignment of error, appellants challenge the trial court's grant of summary judgment in favor of appellee. Civ.R. 56(C) provides in relevant part:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the case show that there is genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
An appellate court's review of summary judgments is de novo. See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35. In Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370, the Ohio Supreme Court restated the appropriate test for summary judgment as follows:
 Pursuant to Civ.R. 56 summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
In their first assignment of error, appellants contend summary judgment was granted in error because each member of their family is entitled to a loss of consortium claim. Specifically, appellants argue that despite the legislature's attempts to overrule Savoie v. Grange Mutual Ins. Co. (1993), 67 Ohio St.3d 500, the legislature has not impaired the validity of Motorists Mutual Ins. Co. v. Andrews (1992),65 Ohio St.3d 362 and, consequently, appellants' loss of consortium claims are unaffected by S.B. No. 20 limitations on per person limits.
For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile insurance contracts the rights and duties of the contracting parties. Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, syllabus. Am.Sub.S.B. 20, 145 Ohio Laws, (S.B. No. 20) became effective October 20, 1994.
The undisputed facts in this case reveal that the bodily injury of appellant Arthur Carruth, which gives rise to appellants' claims as advanced in the within action, was incurred on July 23, 1998. On that day the alleged tortfeasor was covered by a policy of insurance with limits of one hundred thousand dollars ($100,000) per person and three hundred thousand dollars ($300,000) per accident. Appellants were insured under two State Farm policies with coverage limits on each of fifty thousand dollars ($50,000) per person and one hundred thousand dollars ($100,000) per accident. The effective dates of the State Farm policies were June 13 to December 13, 1998 and June 13, 1998 to March 14, 1999, respectively. The limits of the uninsured/underinsured motorist coverage carried by appellants on the State Farm policies was less than the limits of liability coverage carried by the alleged tortfeasor. On June 1, 1999, appellants settled and dismissed their claims with prejudice as to the alleged tortfeasor and his insurer. Subsection (H) of R.C. 3937.18 was enacted after Savoie v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500 was decided. Savoie held unenforceable policy provisions that stated that all claims arising out of the bodily injury, including death, to any one person was subject to per person limits. In enacting subsection (H) in Am.Sub.S.B. No. 20 the Ohio General Assembly stated its purpose was to supersede the effect of the holding of the Ohio Supreme Court in its October 1, 1993 decision in Savoie. Section 10, Am.Sub.S.B. No. 20. See, also, Moore v. State Auto Mut. Ins. Co. (2000), 88 Ohio St. 27, 32.
R.C. 3937.18(H) as amended provides:
 Any automobile liability or motor vehicle liability policy of insurance that includes coverages offered under division (A) of this section or selected in accordance with division (C) of this section and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
Appellants' State Farm policies provide in pertinent part at p. 14:
 1. The amount of coverage is shown on the declarations page under Limits of Liability-U-Each Person, Each Accident. Under Each Person is the amount of coverage for all damages arising out of and due to bodily injury to one person. Bodily injury to one person includes all injury and damages to others arising out of and resulting from this bodily injury. Under Each Accident is the total amount of coverage, subject to the amount shown under Each Person. For all such damages arising out of and due to bodily injury to two or more persons in the same accident.
Coverage U provides:
We will pay damages for bodily injury if an insured:
 1. Is legally entitled to collect from the owner or driver of an uninsured motor vehicle; * * *
 The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance of use of an uninsured motor vehicle. * * *
 A plain reading of this policy language leads us to conclude that the policy validly limited loss of consortium claims to the single per person policy limit applicable to appellant Arthur Carruth.
Appellants, in reliance on Wallace v. Balint (June 8, 2000), Cuyahoga App. No. 75953, unreported, urge us to conclude that their underinsurance coverage must not be limited to the per person limits of the policy. In Wallace, this court followed the reasoning of the supreme court as set forth in Moore v. State Auto Ins. Co. (2000), 88 Ohio St.3d 27.
The Wallace court citing Moore stated:
 The purpose of uninsured motorist coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated. (Citations omitted.) It is clear that claims such as appellant's fit within this purpose. R.C. 2125.01 recognizes a cause of action for wrongful death and R.C. 2125.02(A)(1) acknowledges that parents of wrongful death victims are presumed to have suffered damages.
 Therefore, the parents of a wrongful death victim are legally entitled to recover damages from the tortfeasor responsible for their child's death. However, under appellee's suggested interpretation of R.C. 3937.18(A), the parent of the wrongful death victim would go uncompensated due to the tortfesor's uninsured status, notwithstanding the fact that the parents had uninsured motorist coverage.
 Thus, applying appellee's proposed interpretation of R.C. 3937.18 would thwart the underlying purpose of uninsured motorist insurance, i.e., to protect persons who are entitled to recover damages from uninsured motorists, and would conflict with R.C.
Chapter 2125, the wrongful death statute.
 This result would in turn violate R.C. 1.47(C), which provides a presumption against statutory construction that would produce unreasonable or unjust consequences. Therefore, we decline to adopt appellee's proposed interpretation.
* * *
 Accordingly, we hold that R.C. 3937.18(A)(1) as amended by Am.Sub.S.B. No. 20, does not permit an insured to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer.
 Therefore, we find that the limitation in appellee's policy requiring that the insured suffer bodily injury in order to recover uninsured motorist benefits is an attempt to provide lesser coverage than that which is mandated by law. As such we find that the imitation is invalid and unenforceable. * * * 88 Ohio St.3d at 31-33.
Wallace, supra at 12-13.
The Wallace court went on to say:
 Although Moore was an uninsured motorist case, the logic therein also applies to underinsured motorist cases pursuant to R.C. 3937.18(A)(2).
 We note, however that Moore was based upon the public policy underlying uninsured and underinsured motorist coverage and, therefore, is inapplicable to Balint's liability coverage.
 At the very least, decedent's parents, James P. Wallace, Sr. and Wanda Wallace, were entitled to the each accident limits of one of the four insurance policies they purchased from State Farm. Pursuant to R.C. 2125.02 (A)(1), both parents of the decedent are presumed to have suffered separate damages.
 The trial court erred in granting summary judgment and limiting appellants' recovery to the per person limits of one of their policies.
Id. at 13-14.
We find that the statutory right to a separate cause of action for damages arising from a wrongful death claim as asserted in Wallace and Moore to be distinguishable from the loss of consortium claims brought by appellants sub judice. Even though a loss of consortium claim is a legally separate and independent claim under Ohio law, it is also a derivative cause of action against a third-party tortfeasor. See Gallimore v. Children's Hosp. Med. Ctr. (1993), 67 Ohio St.3d 244, 251. Appellants' loss of consortium claims are accurately described as arising out of bodily injury to appellant Arthur Carruth and the language of the policies unambiguously limits such claims to a single per person limit. Thus, by the terms of the policy appellants Jacqueline and Alicia Carruth are not entitled to their own per person limit.
R.C. 3937.18(A)(2) provides:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage.
 Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
Appellants assert that S.B. No. 20 allows a claim for the per occurrence limits for their loss of consortium claims. In reliance on Schaefer v. Allstate Ins. Co. (1996), 76 Ohio St.3d 553, appellants claim that the set-off provided by R.C. 3937.18(A)(2) relates to the amount received by the claimant, not the per person limit of the tortfeasor. Appellants urge this court to adopt the reasoning set forth in Fox v. Auto Owners Insurance (June 12, 1998), Montgomery App. No. 1456, unreported[2] and argue that the amount available for payment as determined in Motorists Mutual Ins. Co. v. Andrews (1992),65 Ohio St.3d 362, is a comparison between the UIM limits and the amounts actually available to them for payments under the tortfeasors policy. For the reasons that follow we reject this analysis advanced by appellants and we find the analysis set forth in King v. Western Reserve Group (1997), 125 Ohio App.3d 1, as quoted with approval in Stickney v. State Farm Mut. Auto Ins. Co. (Oct. 19, 1998), Richland App. No. 98-C-7, unreported, to be more persuasive.
In Stickney, the court found that * * * the `available for payment' language was introduced by Senate Bill 20 and that in the pre-amended version of the statute, the set[-]off provision allowed the insurer to deduct those amounts actually recovered. Hence, the general assembly has expressed its intent to expand the benefits to an insurer under the set [-] off provision to amounts available to, but not necessarily recovered by, an insured. Stickney, id. at 3.
In Littrell v. Wigglesworth, Butler App. Nos. CA 99-08-141, CA 99-05-092, unreported, at 26-29, the court stated:
 S.B. 20 radically altered the language of R.C. 3937.18(A)(2). * * * It must be noted that S.B. 20 did not alter the term "available for payment" as included in the first sentence of the section.
 But S.B. 20 changed the remaining parts of the section. First, the General Assembly added the sentence underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident.
 As noted in Section 7 of the General Assembly's intent following S.B. 20, this sentence was added to expressly supersede the holding of Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, `relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage.' Second, and more compelling, the General Assembly dramatically altered the language of the final sentence of R.C. 3937.18(A)(2) to read:
 The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. (Emphasis added.)
 The import of this change cannot be underestimated. As noted above, the final sentence in former R.C. 3937.18(A)(2) provided clear direction in determining that any offsets of UIM coverage were to be done according to "amounts actually recovered" by the insured. That language has been removed, and the statute now provides that UIM coverage is to be offset by "those amounts available for payment," not necessarily "actually recovered," under the tortfeasor's policy. Had the General Assembly intended that offsets were to be according to those amounts the insured receives, in hand, from the tortfeasor's liability coverage, there would have been no need to change the language of this final sentence. Instead, the General Assembly rewrote the sentence, and the intent of the General Assembly is clear-offsets must now to be done through a policy limit to policy limit comparison, superseding the holding of Andrews. Any other interpretation of S.B. 20 would render meaningless the substantial changes made in the statute. Other courts have reached this same conclusion. Smock v. Hall, 132 Ohio App.3d 478, 725 N.E.2d 673, 1999 Ohio App. LEXIS 140 (1999), discretionary appeal allowed, 86 Ohio St.3d 1406, 711 N.E.2d 233, appeal dismissed (2000), 87 Ohio St.3d 1250, 722 N.E.2d 521; Stickney v. State Farm Mut. Auto. Ins. Co., 1998 Ohio App. LEXIS 5222 (Oct. 19, 1998), Richland App. No. 98 CA 7, unreported, discretionary appeal allowed (1999), 85 Ohio St.3d 1451, 708 N.E.2d 724; King v. Western Reserve Group (1997), 125 Ohio App.3d 1, 707 N.E.2d 947, discretionary appeal not allowed (1998), 81 Ohio St.3d 1502, 691 N.E.2d 1062.
Littrell, id. at 26-29.
In this case, appellants' insurance policies further provide:
Uninsured Motor Vehicle — means:
 2. A land motor vehicle, the ownership, maintenance of use of which is:
 a. not insured or bonded for bodily injury liability at the time of the accident; or
 b. insured or bonded for bodily injury at the time of the accident; but
 (1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or
(2) the limits of liability:
 (a) are less than the limits you carry for uninsured motor vehicle coverage under this policy; or
 (b) have been reduced by payments to persons other than an insured to an amount less than the limits you carry for uninsured motor vehicle coverage under this policy; or * * * (Emphasis added.)
As the court in Stickney concluded, we also find that based upon the clear legislative intent of S.B. 20 the policies limits of liability language is not in conflict with R.C. 3937.18 et seq. Stickney at 8. Statutorily, the amount available for payment was the tortfeasor's insurance policy's liability coverage. See Littrell v. Wigglesworth, supra. In this case, the alleged tortfeasor's insurance liability limit was $100,000. Thus, appellants' underinsurance motorist coverage policy limit was fully offset by the tortfeasor's coverage by the terms of the subject insurance contracts; appellants in this case are not underinsured as to the alleged tortfeasor because the each person limits of his liability coverage at $100,000 is greater than the each person limits of appellants' $50,000 underinsured coverage provided in each policy issued by appellee State Farm.
Accordingly, we find appellee not obligated to pay underinsured risk coverage. Appellants' first assignment of error is without merit.
In their second assignment of error, appellants contend that the application of S.B. No. 20 denies them a right to a remedy as guaranteed by Article I, Section 16 of the Ohio Constitution. Specifically, appellants assert R.C. 3937.18(H) provides a specific denial of the right to a remedy by the legislature since it provides the enabling legislation without which insurers could not simply eliminate compensation for consortium claims.[3] Appellants state that for split limits policies the argument is: the higher limit of coverage has been purchased but is specifically precluded from applying by the legislature. Appellants claim that the right to a meaningful remedy is lost if claimants have no realistic avenue of compensation.
Article I, Section 16 of the Ohio Constitution provides: All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.
In Beagle v. Walden (1997), 78 Ohio St.3d 59, 64, our supreme court in addressing the petitioner's constitutional arguments, adhered to two well-established legal principles as follows. The first requires that `statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision.' Fabrey v. McDonald Police Dept. (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 33. The second cautions that `the legislature is the primary judge of the needs of public welfare, and this court will not nullify the decision of the legislature except in the case of a clear violation of a state or federal constitutional provision. Williams v. Scudder (1921),102 Ohio St. 305, 131 N.E. 481, paragraphs three and four of the syllabus.' Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 515,620 N.E.2d 809, 820 (Moyer, C.J., dissenting). Beagle, id. at 64.
In Fabray, supra, the supreme court stated:
 [c]ases in which we have invalidated statutes and relied on the basis of Section 16, Article I have involved the serious infringement of a clearly preexisting right to bring suit. Id. at 355. In Beagle, the court went on to say that: R.C. 3937.18
results from legislative policymaking. Coverage in accordance with R.C. 3937.18 is not a common-law right. Any contractual right to coverage prescribed under R.C. 3937.18 does not, therefore, come within the protection of Section 16, Article I of the Ohio Constitution. [Citations omitted.] To the extent that the legislature may exercise its policymaking authority to alter the contractual relationship between insurer and insured to provide greater protection to the insured, it may also limit or remove those protections once given. [Citations omitted.] Beagle, supra at 64; Ott v. Borchardt (Mar. 31, 1998), Seneca App. No. 13-97-47, unreported.
Thus, our supreme court has found the statute affects a contractual right created by the legislature, not a preexisting right to bring suit. As such, we concur with the conclusion reached by the court in Francis v. McLandish (Apr. 19, 1999), Athens App. No. 98 CA 21, unreported which found [i]t is well within [the legislature's] purview * * * to exercise its policymaking authority to alter the contractual relationship embodied in future insurance policies. Any contractual rights that appellants may have had under prior law do not come within the protection of Section 16, Article I of the Ohio Constitution. Thus, S.B. No. 20 did not deprive appellants of a meaningful right to a remedy; it only subjected the amount they may recover from their insurance carrier to the limits set forth in their policy. See Deimer v. Wayne (Apr. 4, 2000), Fairfield App. No. 99 CA 00064, unreported. Accordingly, we find that appellants have failed to show beyond a reasonable doubt that S.B. No. 20 violates Section 16, Article I of the Ohio Constitution by denying them a right to a meaningful remedy. Appellants' second assignment of error is without merit.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
 _______________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
JAMES D. SWEENEY, J. and MICHAEL J. CORRIGAN, J., CONCUR.
[1] In the same entry, the trial court granted defendant Progressive Insurance Company's motion for summary judgment finding: no coverage exists for Plaintiffs under the policy with Progressive. Appellants do not challenge this judgment on appeal.
[2] On August 2, 2000, our supreme court in Littrell v. Wigglesworth, 2000 Ohio LEXIS 1946, S.Ct. 00-801, determined that a conflict exists. Estate of Fox v. Auto-Owners Ins. Co. (June 12, 1998), [Darke] App. No. 1456, unreported and Berry v. Przyborowski (Nov. 19, 1999), Miami App. No. 99-CA-21, unreported, framing the issue for certification as * * * whether R.C. 3937.18 precludes recovery merely because the insured's underinsured motorist coverage limits are identical to or less than the tortfeasor's liability limits when, due to the presence of multiple claimants, the insured is unable to recover the tortfeasor's limits.
[3] We note that appellants Jacqueline and Alicia Carruth each asserted a loss of consortium claim against Edward Deighton and Erie Ins. Co. By entry of June 1, 1999, Plaintiffs' complaints against defendants Edward A. Deighton and Erie Insurance Group were dismissed with prejudice.