OTT et al., Appellants,

v.

BORCHARDT et al.; Westfield Insurance Company, Appellee.

[Cite as *Ott v. Borchardt* (1998), 127 Ohio App.3d 152.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–97–47.

Decided March 31, 1998.

154

*Murray & Murray Co., L.P.A.*, *W. Patrick Murray* and *Steven C. Bechtel*, for appellants.

*Ritter, Robinson, McCready & James, Timothy C. James* and *Mark P. Seitzinger*, for appellee.

EVANS, Judge.

This is an appeal by the plaintiffs-appellants, Raymond and Carolyn Ott, from a judgment of the Court of Common Pleas of Seneca County granting the motion for summary judgment of defendant-appellee Westfield Insurance Company and dismissing appellant's complaint.

Appellants were injured in an accident as passengers in an automobile driven by Andrew Beddow. Beddow's vehicle was struck by an automobile driven by defendant Elizabeth Borchardt, who failed to stop for a stop sign. The collision between the two automobiles resulted in serious injuries to appellants and caused the death of another passenger in the Beddow vehicle. Appellants filed an action against Borchardt and against their own insurance carrier, seeking underinsured motorist coverage for their injuries. Borchardt had liability coverage with appellee with limits of $100,000 per person and $300,000 per accident. Appellants

had underinsured motorist coverage also with appellee, with the same limits as Borchardt's policy.

After settling with all the injured parties for the liability policy's limits, appellee filed a motion for summary judgment on appellants' underinsured motorist claim, asserting that there was no underinsured motorist coverage available based upon the revisions to the law under Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 204 (Senate Bill 20). On October 16, 1997, the trial court granted appellee's motion for summary judgment. Appellants filed this appeal, asserting that Senate Bill 20 was unconstitutional. Appellants asserted the following assignment of error:

"The trial court erred in finding that Am. Sub. Senate Bill 20 was constitutional as Senate Bill 20 violates the right to remedy, separation of powers, special privileges and immunities and equal protection provisions of the Ohio Constitution."

In *Beagle v. Walden* (1997), 78 Ohio St.3d 59, 676 N.E.2d 506, the Supreme Court of Ohio answered the following question, certified to that court by the United States District Court for the Northern District of Ohio, Eastern Division: "Is Ohio Revised Code § 3937.18(A)(2) unconstitutional on any grounds under the facts of this case, including those stated by Plaintiff[?]" R.C. 3937.18(A)(2) provides that underinsured motorist coverage, which insurers are obligated to offer any person purchasing a policy of automobile liability coverage, "shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Under this statute, appellants, who have asserted the same issues as those raised in *Beagle*, would not be entitled to underinsured motorist proceeds, since their policy limits are the same as those of the tortfeasor.

The *Beagle* court first asserted in its opinion two primary assumptions that must guide courts when scrutinizing a statute for constitutionality: First, that

" '[s]tatutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision,' " and second, that " '[t]he legislature is the primary judge of the needs of public welfare, and [the Supreme Court] will not nullify the decision of the legislature except in the case of a clear violation of a state or federal constitutional provision.' " *Id.* at 61, 676 N.E.2d at 507, quoting *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 33; and *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 515, 620 N.E.2d 809, 820 (Moyer, J., dissenting). See, also, *In re Coy* (1993), 67 Ohio St.3d 215, 219, 616 N.E.2d 1105, 1108. The court then considered each proposition challenging the constitutionality of the statute, quoted above, with a majority of four justices deciding only that the statute as a whole does not violate the one-subject rule. *Id.* at 61–62, 676 N.E.2d at 507–508.

In this case, appellants first argue that the statute violates the right to a remedy granted by the Ohio Constitution, which provides, in Section 16, Article I:

"Every person, for any injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

■ Appellants assert that, because injured insurance claimants had, under the common law, a right to excess insurance coverage under their underinsured motorist policies, Senate Bill 20 unconstitutionally denies that right by permitting insurance companies to restrict injured parties' recovery to an amount only up to the limits of their own coverage. The Ohio Supreme Court, in *Beagle,* responded to this challenge by holding that there was no constitutional right to a remedy created by the court in *Savoie,* but that the *Savoie* court merely engaged in contractual interpretation. See *Savoie, supra,* 67 Ohio St.3d 500, 620 N.E.2d 809. Moreover, we find that the right involved in this instance is not the constitutional right to a remedy (which, of course, an injured party retains as the right to bring an action against a tortfeasor), but is only a right granted under a contract of insurance and limited by authorization of a statute. Accordingly, as found by the *Beagle* court:

■ "To the extent that the legislature may exercise its policymaking authority to alter the contractual relationship between insurer and insured to provide greater protection to the insured, it may also limit or remove those protections once given." *Id.* at 64, 676 N.E.2d at 509, citing *Byers v. Meridian Printing Co.* (1911), 84 Ohio St. 408, 422, 95 N.E. 917, 919.

Appellants' first contention is thus not well taken.

■ Second, appellants maintain that the statute violated the separation-of-powers principle of the Ohio Constitution by purporting to overrule law established by the Ohio Supreme Court in *Savoie* and thereby interfering with the

judicial power of the state. However, as noted by the court in *Beagle,* "the *Savoie* court did not rely upon constitutional considerations in reaching its conclusions. Instead, the *Savoie* court interpreted the legislative purpose behind R.C. 3937.18." *Id.,* 78 Ohio St.3d at 62, 676 N.E.2d at 508. Consequently, noted the court, when the legislature, "the final arbiter of public policy," did not approve of the Supreme Court's interpretation, it was free to "redress its dissatisfaction with new legislation." *Id.* at 62–63, 676 N.E.2d at 508. Therefore, the General Assembly's actions did not violate the separation-of-powers provision of the Ohio Constitution. Appellants' argument is, again, not well taken.

■ Next, appellant complains that the statute violates the "Ohio constitutional provision against conferring special privileges and immunities," by conferring a special privilege or immunity on the automobile casualty insurance industry. Appellant refers to Section 2, Article I, of the Ohio Constitution, which provides:

■ "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."

This section is known as Ohio's Equal Protection Clause, guaranteeing that "all similarly situated individuals be treated in a similar manner. * * * In other words, laws are to operate equally upon persons who are identified in the same class." *State ex rel. Patterson v. Indus. Comm.* (1996), 77 Ohio St.3d 201, 204, 672 N.E.2d 1008, 1011. Appellants argue that the Privileges and Immunities Clause of the Ohio Constitution prohibits the *granting* of special privileges or immunities to a special interest group such as the automobile insurance industry as a violation of equal protection. However, we read the plain language of the Privileges and Immunities Clause as prohibiting the granting of an *irrevocable* privilege. Clearly, the legislature, having granted automobile insurers the right to limit certain coverages, is not prohibited from revoking (or altering or repealing) that same right in the future.

■ Finally, appellants contend that the statute discriminates against a "segregated class of injured persons thereby denying them" the equal protection of the laws of Ohio under Section 2, Article I of the Ohio Constitution. We disagree. The passage of R.C. 3937.18(A)(2) does nothing more than permit insurers to set off amounts available for payment from a tortfeasor's liability coverage against the limits of their own insureds' underinsured motorist coverage. As the Supreme Court noted in *Beagle:*

"R.C. 3937.18 places a statutory obligation on all motor vehicle liability insurers to offer uninsured/underinsured motorist coverage. To this extent, the parties'

freedom to contract is superseded in furtherance of important public policy concerns. In placing this obligation on insurers, the General Assembly dictates the terms of the mandatory offering of uninsured/underinsured motorist coverage. * * *

"Because the obligation to offer uninsured/underinsured motorist coverage is rooted in public policy and imposed by the legislature, the legislature is free to delimit the obligation." *Beagle*, 78 Ohio St.3d at 64, 676 N.E.2d at 509.

Thus, the court explained that because the industry's freedom to contract is restricted by the legislative enactment in the first place, the legislature rightly may define the limits of that restriction. Moreover, insureds are free to reject uninsured/underinsured motorist coverage altogether if the terms of that coverage are repugnant to them. As noted the *Beagle* court, "[d]ifferences in treatment based on the individual contract between the insurer and the insured do not impinge upon a fundamental right or burden a 'suspect class" of citizens. *Id.* at 63–64, 676 N.E.2d at 509. Therefore, there is no violation of the Equal Protection Clause. "The only classifications of insureds treated differently under R.C. 3937.18(A)(2) are those who, by contract, have chosen different policy limits." *Id.* at 63, 676 N.E.2d at 508.

Having found no error prejudicial to the appellants herein in any of the particulars assigned and argued, we overrule appellants' assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

SHAW, P.J., and THOMAS F. BRYANT, J., concur separately in judgment only.

SHAW, Presiding Judge, concurring separately.

I concur in the analysis of the issues contained in the lead opinion of Justice Cook in the *Beagle* decision and, to this extent only, concur in the judgment reached by the lead opinion of this court in the case before us.

The decision of the Ohio Supreme Court in *Beagle* is somewhat unusual in that it addresses in distinct fashion the same constitutional issues present in our case, involving separation of powers, equal protection, right to a remedy, and privileges and immunities. Unfortunately, a majority of four justices concurred only as to the constitutional issue of the one–subject rule, an issue that is not raised in our case. Three justices dissented, without opinion, as to all issues addressed in the lead opinion of *Beagle*, and one justice, having concurred only as to the one–subject rule, in essence abstained as to the remaining issues.

The lead opinion in the case before us makes general note of this situation but then proceeds to make numerous authoritative references to the "Ohio Supreme

Court" in *Beagle* as having resolved or answered all of the constitutional issues raised in the case before us. In view of the actual *Beagle* decision, I believe these references are inappropriate and misleading.