DECISION AND JUDGMENT ENTRY
This is an appeal from a Ross County Common Pleas Court summary judgment entered in favor of Farmers Insurance of Columbus, Inc., defendant below and appellee herein.
Darlene M. Davidson, Jessica Fout, Adam Fout, Shannon Snow, and Joshua Dehus, plaintiffs below and appellants herein, raise the following assignment of error:
 "THE TRIAL COURT ERRED IN FINDING THAT OHIO LAW ALLOWS INSURERS TO LIMIT UNDERINSURED MOTORIST COVERAGE TO THE SINGLE PER PERSON LIMIT WHEN ONLY ONE PERSON HAS SUFFERED BODILY INJURY."
The facts in the case at bar are relatively undisputed. On June 8, 1995, Darlene was a passenger in the vehicle her minor daughter, Jessica, was driving. Nathan Uhrig, who was driving his father's (Gary Uhrig's) vehicle, allegedly hit the Davidson vehicle. Darlene allegedly sustained physical injuries. Nathan allegedly proximately caused the accident.
At the time of the accident: (1) appellee insured appellants under an automobile liability insurance policy that provided uninsured/underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident; and (2) the alleged tortfeasor carried automobile liability insurance in the amount of $100,000 per person and $300,000 per occurrence.
On October 1, 1998, appellants filed an amended complaint seeking uninsured/underinsured ("UM/UIM") benefits for Darlene's physical injuries and for the minor children's loss of consortium claims.[3]
The parties subsequently filed cross-motions for summary judgment. On February 17, 2000, the trial court granted appellee's motion for summary judgment and denied appellants' motion. Appellants filed a timely notice of appeal.
In their sole assignment of error, appellants argue that the trial court erred by granting appellees summary judgment. Specifically, appellants assert that the trial court incorrectly found that Ohio law permits insurers to limit UIM coverage to the single per person limit when only one person has suffered bodily injury. Within their assignment of error, appellants raise three issues: (1) whether the children's loss of consortium claims are individually subject to the per person limit of the UIM coverage; (2) whether Ohio law permits insurance companies to set off, under UIM policy provisions, the amounts available for payment under another insurance policy, as opposed to the amounts each insured actually received under other applicable insurance policies; and (3) whether S.B. 20 denies consortium claimants constitutional rights. We will address each issue in turn.
A SUMMARY JUDGMENT STANDARD
When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g.,Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241,245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
 B OHIO LAW PERMITS AUTOMOBILE LIABILITY INSURERS TO LIMIT CONSORTIUM CLAIMS ARISING OUT OF A SINGLE INDIVIDUAL'S BODILY INJURY TO THE PER PERSON LIMIT SPECIFIED IN THE POLICY
Appellants first argue that the trial court erroneously concluded that each child's loss of consortium claim was not individually subject to the per person limit. Appellants claim that Ohio law does not permit insurers to consolidate all loss of consortium claims and subject all such claims to the per person limit when only one person has suffered bodily injury. Appellants contend that under Ohio law, each loss of consortium claim is a separate and distinct claim entitled to separate per person limits.
In support of their argument, appellants cite Schaefer v. AllstateIns. Co. (1996), 76 Ohio St.3d 553, 668 N.E.2d 913, and Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. Appellants note that in Schaefer, the Ohio Supreme Court declared that each person covered by an automobile insurance policy who asserts a loss of consortium claim has a separate claim that is individually subject to the per person limit contained in the policy. Appellants further note that inSavoie, the Ohio Supreme Court stated that each person covered by an UIM policy has a separate claim subject to a separate per person policy limit.
This court recently observed, however, that the General Assembly, through its enactment of S.B. 20, superseded both Schaeffer and Savoie. See Post v. Harber (Feb. 16, 2001), Vinton App. No. 00 CA 541, unreported; see, also, Plott v. Colonial Ins. Co. (1998),126 Ohio App.3d 416, 710 N.E.2d 740; Justice v. State Farm Ins. Co. (Oct. 18, 2000), Licking App. No. 2000 CA 29, unreported, discretionary appeal allowed (2001), 91 Ohio St.3d 1473, 744 N.E.2d 193; Greiner v.Timm (Mar. 28, 2000), Franklin App. No. 99AP-618, unreported, appeal disallowed (2000), 89 Ohio St.3d 1466, 732 N.E.2d 998; Maric v. Adams
(Mar. 31, 2000), Lake App. No. 98-L-142, unreported, conflict certified (2000), 89 Ohio St.3d 1488, 734 N.E.2d 376; Francis v. McClandish (Apr. 19, 1999), Athens App. No. 98 CA 21, unreported; Smock v. Hall (1999),132 Ohio App.3d 478, 725 N.E.2d 673, discretionary appeal allowed,86 Ohio St.3d 1406, 711 N.E.2d 233, appeal dismissed (2000),87 Ohio St.3d 1250, 722 N.E.2d 521.
R.C. 3937.18(H), as amended by S.B. 20, provides that any automobile liability insurance policy that includes underinsured motorist coverage may limit all claims arising out of any single individual's bodily injury to the per person limit set forth in the insurance policy. R.C. 3937.18(H) provides:
Any automobile liability * * * policy of insurance that includes [underinsured motorist coverage] * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
R.C. 3937.44 similarly permits automobile liability insurers to limit all claims arising out of any single individual's bodily injury to the per person limit set forth in the insurance policy. The statute provides:
Any * * * automobile liability or motor vehicle [insurance policy] that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
The clear import of the foregoing provisions, as applied to underinsured motorist coverage, is to permit automobile insurers to limit all claims, including consortium claims, arising out of any single individual's bodily injury to the per person limit shown in the insurance policy. The statutes could not be clearer. See Clark v. Scarpelli (2001),91 Ohio St.3d 271, 744 N.E.2d 719 (recognizing that R.C. 3937.18(H) permits insurers to consolidate wrongful death claims, even though each wrongful death claimant has a "separate and distinct" claim); Maric,supra (noting that R.C. 3937.18(H) "specifically authorize[s] insurers to limit multiple derivative claims, such as claims for loss of consortium, to a single per-person coverage limit").
Other appellate courts have recognized that R.C. 3937.18 permits insurers to consolidate all claims arising out of any single individual's bodily injury to the per person limit and that Schaefer and Savoie no longer represent the current state of the law relating to consolidating derivative claims, such as loss of consortium claims and wrongful death claims. See, e.g, Plott, supra; Francis, supra; Smock, supra.
Appellants assert, however, that R.C. 3937.18(H) is ambiguous. In support of their argument, appellants cite Moore v. State Auto.Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 723 N.E.2d 97. In Moore, the Ohio Supreme Court held:
 "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer."
Id., syllabus. Moore essentially revived Sexton v. State Farm Mut.Ins. Co. (1982), 69 Ohio St.2d 431, 433 N.E.2d 555.[4]
 Moore does not, however, apply to the case at bar. Moore applies in situations only when the insurer attempts to prohibit completely a non-bodily injured insured from collecting uninsured/underinsured motorist benefits under the insured's own policy. See Post, supra. Compare Lippert v. Peace (Mar. 27, 2001), Hancock App. No. 5-2000-41, unreported; Justice, supra; Wallace v. Balint (June 8, 2000), Cuyahoga App. No. 75953, unreported, discretionary appeal allowed (2000),90 Ohio St.3d 1484, 738 N.E.2d 1256, and Wright v. Allstate Ins. Co. (Sept. 13, 2000), Lorain App. No. 99 CA 7485, unreported, and Rakowskiv. Cassel (Feb. 18, 2000), Lucas App. No. L-99-1135, unreported, withCarruth v. Erie Ins. Group (Sept. 21, 2000), Cuyahoga App. No. 77161, unreported, discretionary appeal allowed (2001), 91 Ohio St.3d 1431,741 N.E.2d 894, and Campbell v. Allstate Ins. Co. (May 19, 2000), Clark App. No. 99 CA 065, unreported, and Lyles v. Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported. See, also, Plott v. Colonial Ins. Co. (1998), 126 Ohio App.3d 416, 710 N.E.2d 740; Greiner, supra.
In the case at bar, unlike Moore, appellants have not argued that appellee is attempting to outright deny coverage to the children for their loss of consortium claims. Rather, appellee is attempting to limit the liability to the per person limits specified in the policies and as R.C.3937.18(H) and 3937.44 permit. Moreover, we note that Moore recognizes that the legislative intent behind the amendments to R.C. 3937.18(A)(2) was to supersede the court's Savoie holding.
Thus, we conclude that under the Ohio Revised Code's underinsured motorist provisions, automobile liability insurers may consolidate all claims arising out of one individual's bodily injury and may subject all such claims to the per person limit specified in the policy. We disagree with appellants that Ohio law does not permit automobile liability insurers to subject all consortium claims to the per person limit when only one person has suffered bodily injury.[5]
 C OHIO LAW PERMITS A POLICY-LIMIT-TO-POLICY-LIMIT COMPARISON OF UIM LIABILITY LIMITS WHEN MULTIPLE CLAIMANTS SEEK UIM COVERAGE UNDER A SINGLE POLICY
Appellants next argue that in determining whether an insurer is underinsured, the relevant consideration is the amount the insured actually received, as opposed to the amount available, from the tortfeasor. Appellants dispute appellee's claim that Ohio law permits a strict policy-limit-to-policy-limit comparison in determining UIM coverage.
Two recent Ohio Supreme Court cases resolve this issue. In Littrell v.Wigglesworth (2001), 91 Ohio St.3d 425, 746 N.E.2d 1077, syllabus, and inClark v. Scarpelli, supra, the court held:
 "For the purpose of setoff, the `amounts available for payment' language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)."
 Clark and Littrell explain that a strict policy-limit-to-policy-limit comparison would be appropriate when multiple claimants or a single claimant seek UIM coverage under a single policy, but not when multiple claimants seek UIM coverage under separate policies. See Clark,91 Ohio St.3d at 278-79, 744 N.E.2d at 727; Littrell, 91 Ohio St.3d at 431 n. 6 and n. 7, 746 N.E.2d at ___; see, also, Post at n. 17. In Littrell, the court explicitly recognized that the "`amounts available for payment' language arises when both multiple parties and multiple policies are involved." Id. at n. 6 (emphasis sic).
Our recent decision in Post comports with both Clark and Littrell. As we explained in Post at n. 17:
 "* * * [A]n insurer can set off the amounts its own insured or insureds received under the tortfeasor's policy or any other applicable policy. The insurer cannot set off amounts that other claimants who are not insureds under its policy received from the tortfeasor's policy or other applicable policies. The insurer can set off only those amounts its own insured or insureds in a multiple claimant situation received under all other applicable policies."
In other words, "[a]n insurer may not set off amounts available to other claimants who are not `insureds' under its policy." Post; see, also, King v. Western Reserve Group (1997), 125 Ohio App.3d 1, 9,707 N.E.2d 947, 952. As we noted in Post:
 "`It makes little sense to permit an insurer to offset from its obligations amounts that a tortfeasor's carrier happens to have paid to injured parties other than the insureds. Indeed * * * if [the insurer] could deduct payments made to claimants other than the insureds, then under certain circumstances the insureds would receive nothing from their underinsured motorist coverage and nothing from the tortfeasor.'"
(quoting King, 125 Ohio App.3d at 9, 707 N.E.2d at 952); see, also, Berryv. Pryzborowski (Nov. 19, 1999), Miami App. No. 99-CA-21, unreported (stating that a policy-limit-to-policy-limit comparison would be appropriate when all claimants who received amounts under the tortfeasor's policy all are seeking UIM coverage under the same policy: If all claimants "are claiming proceeds from the same policy, the amount of set-off is the entire amount paid to them collectively, rather than as individuals").
In the case at bar, because both multiple parties and multiple policies are not involved, the amounts available for payment language does not affect the determination of appellants' UIM coverage. See Littrell,supra (stating that the "`amounts available for payment' language arises when both multiple parties and multiple policies are involved") (emphasissic). Appellants all are seeking liability coverage under the tortfeasor's policy and all appellants are seeking UIM coverage under the same policy. Thus, under the facts presented in the case at bar,[6]
R.C. 3937.18(A)(2) permits the insurer to aggregate appellants' claims and to set off the amounts collectively available to appellants under the tortfeasor's policy.
D CONSTITUTIONAL CLAIMS
Appellants further argue that S.B. 20 suffers from various constitutional infirmities. We conclude, however, that the trial court lacked jurisdiction to consider appellant's constitutional challenges.
When challenging the constitutionality of a statute, the complaining party must raise the constitutionality issue in the complaint or in an amended complaint and must serve the Attorney General with the complaint. Cicco v. Stockmaster (2000), 89 Ohio St.3d 95, 97,728 N.E.2d 1066. Failure to do so deprives the trial court of jurisdiction. Id. As the court explained in Cicco:
 "[A] party who is challenging the constitutionality of a statute must assert the claim in the complaint (or other initial pleading) or amendment thereto, and must serve the pleading upon the Attorney General in accordance with methods set forth in Civ.R. 4.1 in order to vest a trial court with jurisdiction under R.C. 2721.12."
Id.
In the case at bar, appellants failed to raise their constitutional arguments in a complaint or in an amended complaint. Thus, the constitutional issues are not properly before us and the trial court lacked jurisdiction to consider the issue. To this limited extent, therefore, we reverse the portion of the trial court's judgment addressing appellant's constitutional claims.
Although we decline to address appellant's constitutional argument, we note that other courts have rejected similar arguments. See, e.g., Beaglev. Walden (1997), 78 Ohio St.3d 59, 676 N.E.2d 506; Lippert v. Peace
(Mar. 27, 2001), Hancock App. No. 5-2000-41, unreported; Gustin v. USAACas. Ins. Co. (Feb. 13, 2001), Franklin App. No. 00AP-130, unreported;Kleinsmith v. Allstate Ins. Co. (Dec. 22, 2000), Richland App. No. 00 CA 14-2, unreported; Haddad v. State Farm Mut. Auto. Ins. Co. (Feb. 28, 2000), Stark App. No. 1999CA00262, unreported; Washington v. CitizensSecurity Mut. Ins. Co. (Sept. 21, 2000), Cuyahoga App. No. 76082, unreported, discretionary appeal allowed (2001), 91 Ohio St.3d 1431,741 N.E.2d 894; Lyles v. Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported.
In Beagle, for example, the court held that R.C. 3937.18 does not destroy the right to a remedy. The court explained that because R.C.3937.18 "results from legislative policymaking, [c]overage in accordance with R.C. 3937.18 is not a common-law right." Id. at 64. The court therefore held:
 "Any contractual right to coverage prescribed under R.C. 3937.18 does not * * * come within the protection of Section 16, Article I of the Ohio Constitution. Fabrey v. McDonald Police Dept., 70 Ohio St.3d at 355, 639 N.E.2d at 35; Mominee v. Scherbarth (1986), 28 Ohio St.3d 270, 291-292, 28 Ohio B. Rep. 346, 364-365, 503 N.E.2d 717, 733-734 (Douglas, J., concurring). To the extent that the legislature may exercise its policymaking authority to alter the contractual relationship between insurer and insured to provide greater protection to the insured, it may also limit or remove those protections once given. See Byers v. Meridian Printing Co. (1911), 84 Ohio St. 408, 422, 95 N.E. 917, 919; see, also, Mominee v. Scherbarth, 28 Ohio St.3d at 292, 28 Ohio B. Rep. at 365, 503 N.E.2d at 734 (Douglas, J., concurring)."
Id.; see, also, Ott v. Borchardt (1998), 127 Ohio App.3d 152,711 N.E.2d 1066 (concluding that R.C. 3937.18 does not destroy the right to a remedy but merely is a contractual limitation that does not alter the party's remedy against the tortfeasor); Plott v. Colonial InsuranceCompany (1998), 126 Ohio App.3d 416, 710 N.E.2d 740 (stating that R.C.3937.44, which is similar to R.C. 3937.18(H), "speaks only to the contractual agreement between the injured insured and his or her underwriting insurance company, not to one's right to bring an action against the tortfeasor. Alteration of the contractual relationship between an insurer and insured does not impinge one's constitutional right to seek remedy through an action against the tort feasor").
Accordingly, based upon the foregoing reasons we overrule appellants' sole assignment of error. However, because the trial court lacked jurisdiction to consider the constitutionality of R.C. 3937.18, to this limited extent we reverse the portion of the trial court's judgment addressing the constitutionality of R.C. 3937.18. Thus, we affirm in part and reverse in part the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part and reversed in part. Appellees shall recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ Peter B. Abele, Presiding Judge.
Harsha, J.: Concurs in Judgment Opinion as to Sections A, B and D; Concurs in Judgment Only as to Section C.
Evans, J.: Concurs in Judgment Opinion as to Sections A, B and D; Dissents as to Section C.
[3] On June 6, 1997, appellants filed a complaint against Gary Uhrig, Farmers Insurance Group of Companies, and Farmers Insurance Group of Columbus, Inc. Appellants' complaint included a negligence claim against Uhrig, loss of consortium claims on behalf of Darlene's minor children, and a claim seeking uninsured/underinsured motorist benefits against Farmers.
On July 23, 1997, the parties' agreed entry denoted that the proper corporate defendant is Farmers Insurance Group of Columbus, Inc., not Farmers Insurance Group of Companies. The entry ordered all references in the complaint to Farmers Insurance Group of Companies amended to Farmers Insurance Group of Columbus, Inc.
On October 3, 1997, appellants voluntarily dismissed without prejudice Farmers Insurance Group of Columbus, Inc.
[4] In Sexton, the court stated that an insurer could not require its insured to suffer bodily injury in order to be entitled to uninsured motorist coverage.
[5] In the case at bar, appellants have not raised the issue of whether appellee's policy included a provision limiting consortium claims to the per person limit when only one person has suffered bodily injury. Rather, appellants appear to limit their argument to whether Ohio law permits insurers to do so. We note, however, that appellee's policy clearly limited derivative claims, including consortium claims, arising out of any one person's bodily injury to the per person limit. Appellee's "Limit of Liability" provision provides as follows:
 "1. The limit for `each person' is the maximum limit of liability for all claims and damages arising out of and due to bodily injury sustained by any one person in any one accident.
 2. Subject to the limit for `each person,' the limit for `each accident' is the maximum limit of liability for all claims and damages arising out of and due to bodily injury sustained by two or more persons in any one accident."
[6] Appellee's policy provides:
"Other Insurance
 1. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.
 2. The amount of [UIM] coverage we will pay * * * shall be reduced by the amount of any other bodily injury coverage available to any party held to be liable for the accident."